IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

VICTORIA W.,[1]

       Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

Case No. 3:19-cv-01929-AA
**OPINION AND ORDER**

_____

AIKEN, District Judge:

    Plaintiff Victoria W. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's claims for a period of disability and disability insurance benefits. For the reasons set forth below, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

## BACKGROUND

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for the non-governmental party's immediate family member.

Page 1 - OPINION AND ORDER

On November 3, 2014, plaintiff filed a Title II application for a period of disability and disability insurance benefits, Tr. 110, and a Title XVI application for supplemental security income. Tr. 126. Both applications alleged disability beginning on May 31, 2014. Tr. 110, 126. These applications were both initially denied. Tr. 123, 139. They were also both denied upon reconsideration. Tr. 153, 166. At plaintiff's request, hearings were held before an Administrative Law Judge ("ALJ") on May 11, 2018, Tr. 72, and on May 6, 2019. Tr. 38.

On June 18, 2019, the ALJ issued her decision, finding that plaintiff was not disabled. Tr. 7. The Appeals Council denied plaintiff's request for review on September 25, 2019, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This action followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . ." 42 U.S.C. § 423(d)(1)(A).

> Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act. The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 724-25 (9th Cir. 2011) (internal

citation omitted).

At the first four steps, the claimant bears the burden of proof. *Bustamante v.*

*Massanari*, 262 F.3d 949, 953 (9th Cir. 2001). On the fifth step, the burden shifts to

the Commissioner. *Id.* at 953-54. The Commissioner must then show that the

claimant can perform other work that exists in significant numbers in the national

economy, "taking into consideration the claimant's residual functional capacity, age,

education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §

416.920(a)(4)(v). If, however, the Commissioner proves that the claimant can perform

other work existing in significant numbers in the national economy, the claimant is

not disabled. *Bustamante*, 262 F.3d at 953-54.

## ALJ'S FINDINGS

The ALJ performed the five-step analysis described above. At step one, the

ALJ found that plaintiff had not engaged in substantial gainful activity since May

31, 2014, the alleged onset date. Tr. 12. At step two, the ALJ found that plaintiff

had the following severe impairments: status-post c difficile; colitis with

sepsis and partial colectomy with ileostomy; anemia; vitamin D deficiency; and

chronic pain disorder/seronegative rheumatoid arthritis. *Id.* At step three, the ALJ

found that plaintiff did not have an impairment or combination of impairments that

met or was medically equivalent to a listed impairment. Tr. 14.

The ALJ found that plaintiff had the residual functional capacity ("RFC") to perform sedentary work with the following additional limitations: she can occasionally stoop, kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds. Tr. 15. She cannot tolerate exposure to any hazards. *Id.* In addition, she must have a bathroom on-site at her workplace. *Id.* At step four, the ALJ found that plaintiff was able to perform her past relevant work as a customer complaint clerk. Tr. 28. Even though plaintiff was found to be capable of performing past relevant work, the ALJ made alternative findings for step five. *Id.*

At step five, the ALJ found that plaintiff could perform other work existing in the national economy; specifically, plaintiff could work as a document preparer, an addressor, or a call out operator. Tr. 29. As a result, the ALJ found that plaintiff was not disabled between the alleged onset date and the date of her decision. *Id.*

## STANDARD OF REVIEW

The district court must affirm the ALJ's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 59 S. Ct. 206, 217 (1938). In reviewing the ALJ's alleged errors, this Court "must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citing *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001)). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 129 S. Ct. 1696, 173 L. Ed. 2d 532 (2009).

## DISCUSSION

Plaintiff alleges the ALJ erred by (1) improperly rejecting the opinion of the examining physician; (2) not classifying some of plaintiff's impairments as severe at step two; (3) determining that plaintiff's impairments did not satisfy a listing at step three; (4) rejecting plaintiff's subjective symptom testimony; and (5) incorrectly performing the step four and five determinations.

## I.    Medical Opinion Evidence

Plaintiff states that the ALJ erred by improperly rejecting the opinion of plaintiff's examining physician, John A. French, M.D. According to Dr. French's plan narrative, dated April 21, 2015, "[Plaintiff's] deficit has been present for nearly 10 months. I would anticipate improvements over the next several years . . ." Tr. 1123. Dr. French stated that plaintiff would be limited to occasionally lifting five

pounds and to rarely lifting ten pounds. *Id.* She could never lift more than ten pounds. *Id.* She should not walk for more than fifty feet on level surfaces and should not walk on uneven surfaces. *Id.* Sitting would be possible if plaintiff were able to change position every hour. *Id.* Plaintiff was limited to standing for no more than fifteen minutes at a time. *Id.* Dr. French placed no restrictions on plaintiff's ability to travel. *Id.*

The ALJ gave Dr. French's opinion partial weight, because "it was generally consistent with the record at that point in time" and Dr. French stated plaintiff's "functional abilities continued to improve over time." Tr. 27. An ALJ may discount a doctor's opinion when it is inconsistent with the overall record. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The Commissioner noted that in March of 2017 plaintiff "had much improved pain control," was "more active overall," and reported being able to clean her car. Tr. 2790. One month later, in April of 2017, plaintiff demonstrated increased function with no new pain complaints. Tr. 2793. In February of 2018, plaintiff reported "improved quality of life and activity." Tr. 2811.

While Dr. French did not place restrictions on plaintiff's ability to travel, that is generally inconsistent with his other restrictions. Not being able to sit for more than an hour without changing position is reasonably inconsistent with the ability to travel, particularly by airplane. In 2016, plaintiff flew to Mexico for a vacation. Tr. 83. In 2017, plaintiff took a family vacation to Washington. Tr. 2831. The ALJ cited these as inconsistencies with plaintiff's alleged functional limitation and degree of pain. Tr. 27.

Based on improvements in plaintiff's condition, and inconsistencies with the record, the Court finds that the ALJ properly gave Dr. French's medical opinion partial weight.

## II.    Step Two

Plaintiff asserts that the ALJ erred by stating that the following impairments were not severe at step two: Chiari 1 malformation; depression and anxiety; fibromyalgia; thoracic spondylosis; and radial styloid tenosynovitis. However, the ALJ did find that the plaintiff had the following severe impairments: status-post c difficile; colitis with sepsis and partial colectomy with ileostomy; anemia; vitamin D deficiency; and chronic pain disorder/seronegative rheumatoid arthritis. Tr. 12.

Step two "is not meant to identify the impairments that should be taken into account when determining the [residual functioning capacity] RFC." *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017). "Step two is merely a threshold determination meant to screen out weak claims." *Id.* at 1048. In this case, the ALJ resolved step two in plaintiff's favor. Tr. 12. Although the ALJ did not classify all the plaintiff's alleged impairments as severe, the ALJ discussed the plaintiff's other alleged impairments when she determined the plaintiff's RFC. Tr. 15-27. Accordingly, the ALJ did not err at step two of the sequential analysis.

## III.    Listed Impairments and Medical Equivalency

Plaintiff contends that the ALJ erred in determining that plaintiff's impairments did not satisfy a listing, specifically 14.09D. To meet the requirements of a listing, an impairment must satisfy all the criteria of that listing and meet the

twelve-month duration requirement. 20 C.F.R. § 416.925(c)(3). Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." *Id.*

At step three, the burden is on the plaintiff to show that her impairments satisfy the components of the listing. *Bustamante*, 262 F.3d at 953. Listing 14.09D, inflammatory arthritis, calls for repeated manifestations of at least two constitutional symptoms or signs such as severe fatigue, fever, malaise, or involuntary weight loss. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 14.09(D). The plaintiff must also demonstrate marked limitations in her activities of daily living, maintaining social functioning, or in completing tasks in a timely manner. *Id.*

Plaintiff states that she has shown repeated manifestations of inflammatory arthritis, with marked limitations in her activities of daily living. A plaintiff needs to offer a plausible theory and specific evidence of how their impairments satisfy the requirements of a listing. *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001). However, other than generalized statements and references to the transcript, plaintiff does not provide specific evidence of how her symptoms meet the requirements of the listing. The Court concludes that the ALJ did not err at step three of the sequential analysis.

## IV.    Subjective Symptom Testimony

Plaintiff states that the ALJ erred by rejecting plaintiff's subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test

in which the ALJ must determine whether the plaintiff has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). If the first stage is satisfied, absent evidence of malingering, in the second stage the ALJ may only reject the plaintiff's testimony about the severity of her symptoms if there are clear and convincing reasons to do so. *Id.*

If the ALJ discounts the plaintiff's symptom testimony, she must give specific reasons for doing so, general findings are not enough. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). Here, the ALJ found that plaintiff's statements were not consistent with medical evidence and other evidence in the record. Tr. 26. Specifically, the ALJ stated that plaintiff's "allegations of muscle weakness are inconsistent with objective evidence." *Id.* In December of 2014, plaintiff showed normal muscle tone and no atrophy. Tr. 1116. Later, in November of 2015, plaintiff demonstrated no atrophy or focal weakness. Tr. 1515. This evidence directly supports the ALJ's finding that plaintiff's claims of muscle weakness were inconstant with the medical evidence.

The ALJ also noted instances where the plaintiff had not followed her doctors' dietary and nutritional guidance to manage the symptoms of her anemia. Tr. 26. To be eligible for benefits, claimants are expected to follow prescribed treatments. 20 C.F.R. § 404.1530(a). It is proper for an ALJ to consider the claimant's failure to follow a prescribed course of treatment when weighing their subjective symptom testimony. *McReynolds v. Berryhill*, 341 F. Supp. 3d 869, 875

(N.D. Ill. 2018). In September 2016, plaintiff's medical provider noted that she was not following the recommended diet following her gastric bypass surgery. Tr. 1701. Her symptoms may have been due to "high carbohydrate load in her diet and her long periods of fasting." *Id.* Plaintiff had also cancelled bariatric follow-up appointments because she hadn't felt they were necessary. Tr. 1880.

Regarding the plaintiff's chronic pain, the ALJ noted multiple instances where the plaintiff did not appear to be in acute distress, and that her pain was managed with opiate therapy, despite her allegations of severe debilitating pain. Tr. 26. At plaintiff's December 2014 appointment, she appeared pleasant, and had "no tenderness to palpation." Tr. 1116. During three separate visits to the same clinic, on July 21, 2016, January 18, 2017, and August 7, 2017, plaintiff was described as "in no acute distress, pleasant." Tr. 1358, 1318, 1299.

When seen by a different provider on November 23, 2016, she was again described as "in no acute distress." Tr. 2713. On March 22, 2017, plaintiff's provider noted that her pain improved with opiate therapy. Tr. 2791. On April 14, 2017, the provider noted that plaintiff had "increased function" with her pain medication. Tr. 2793. On February 8, 2018, her chronic pain was described as "stable," and the provider noted that she continued "to derive meaningful benefit" from her opioid therapy. Tr. 2810.

On this record, the Court concludes that the ALJ made a reasonable assessment of the plaintiff's subjective symptom testimony.

**V.    Steps Four and Five**

Plaintiff claims that the ALJ's determinations at steps four and five were erroneous. Specifically, plaintiff assigns error to the fact that the VE did not include the limitations described by Dr. French or the plaintiff's discounted subjective symptom testimony. This Court found that the limitations described by Dr. French were properly discounted above. *See supra* Part I. Additionally, plaintiff's subjective symptom testimony was also assessed correctly. *See supra* Part IV. Thus, the VE considered the relevant information needed for proper analyses at steps four and five.

At step four, the ALJ must determine whether the plaintiff is able to perform past relevant work. *Keyser*, 648 F.3d at 724. Based on the testimony of the VE, the ALJ determined that the plaintiff was able to perform her past relevant work as a customer complaint clerk. Tr. 28.

Even though the ALJ found that plaintiff could perform past relevant work at step four, she also made alternative findings at step five. Tr. 28. At step five, the ALJ must determine whether the plaintiff is able to perform other work that exists in the national economy. *Keyser*, 648 F.3d at 724-25. Here, the ALJ found that the plaintiff was able to perform the jobs of document preparer, addressor, or call out operator, and that those jobs existed in significant numbers in the national economy. Tr. 29.

Based on this record, the ALJs determinations at steps four and five are affirmed.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.


Dated this  6th  day of  April   2022.




_____/s/Ann Aiken_____

Ann Aiken
United States District Judge